766 P.2d 787

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Keith PRESTWICH, Defendant–Appellant.**

No. 16947.

Court of Appeals of Idaho.

Dec. 1, 1988.

Rehearing Denied Jan. 23, 1989.

Reginald R. Reeves of Denman & Reeves, Idaho Falls, for defendant-appellant.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

This appeal follows from our earlier decision in *State v. Prestwich*, 110 Idaho 966, 719 P.2d 1226 (Ct.App.1986) *(Prestwich I)*. There, Prestwich had entered a conditional plea of guilty to a charge of manufacturing a controlled substance, marijuana, preserving his right to appeal from an order denying a motion to suppress evidence obtained with a search warrant. We vacated the order on the ground that a magistrate lacked probable cause to issue a search warrant. However, we remanded the case so the district court could determine whether the search should be upheld because of the "good faith" exception to the exclusionary rule. The district court upheld the search. Prestwich has appealed again. He contends that the district court erred in its application of the "good faith" exception.

The record reveals the following: Law enforcement officers received three anonymous telephone calls pertaining to the cultivation of marijuana by Prestwich at his residence in Idaho Falls.[1] The first call provided the officers only with the informant's tip that Prestwich was growing marijuana in a van-type truck body attached to a mobile home. This male caller gave the location of Prestwich's residence and a brief description of the property. The second call was made to the sheriff's office a month later by a different caller. She stated that she had wandered onto Prestwich's property in an effort to locate

---

1. We said in *Prestwich I* that it was unclear whether the three calls were made by the same person or whether more than one person made the calls. In this appeal, however, we were provided with a tape recording of the proceedings where Officer Birch applied to the magistrate for the search warrant. In addition to his affidavit, Birch gave sworn testimony showing that the first call was made by a male caller to a state drug "hot line" number. The second and third calls came from an anonymous female informant to the Bonneville County Sheriff's office.

her lost dog. While searching, the caller became curious about lights at the residence that were still on during the daytime. The caller stated that she looked through a window into a shed attached to Prestwich's residence and observed what she believed to be marijuana plants about five to six feet tall growing inside. The caller gave the location of Prestwich's residence and described the premises including details about the shed in which the plants were growing. The third call was a follow up by the second informant. The caller confirmed the information given previously and stated that she wanted to remain anonymous.

The officers compared the information received from the two unknown informants and found that the information given by the second caller was consistent with information received from the first. Officer Birch then made his own observation of the Prestwich property to confirm that the description of the buildings and their layout was correct. The presence of the described shed and ventilator fan was noted. Another officer carried out a surveillance of the residence during the following evenings and confirmed the presence of lights during the late hours of the night. Officer Birch testified that he believed the second independent call corroborated the information received from the first. He also believed, based on his training and experience, that the layout of the premises, together with the presence and use of lights and the ventilating fan, indicated a marijuana growing operation. Birch then went to the prosecutor's office for assistance. Birch testified that the prosecutor agreed that they had sufficient information to seek a search warrant. The prosecutor assisted the officer in presenting the information to the magistrate.

After taking additional testimony from Officer Birch, the magistrate issued a search warrant for Prestwich's residence and the attached shed. The search, taking place at approximately 5:00 p.m., yielded a large quantity of marijuana plants, related evidence and equipment. Prestwich's motion to suppress the items was denied by the district court and Prestwich entered a conditional plea of guilty to the charge of manufacturing a controlled substance under I.C. § 37–2732.

On appeal in *Prestwich I* we vacated the order of the district court denying Prestwich's suppression motion, holding that there was not probable cause for issuance of the search warrant. The case was remanded to the district court to reconsider the motion to suppress and to determine whether the evidence obtained in the search was still admissible under the "good faith" exception to the exclusionary rule as found in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).[2]

On remand the district court conducted a hearing, taking additional evidence concerning the officers' information and their conduct in seeking the warrant. The court held that the officers had taken every step that could reasonably be expected of them in order to secure a valid warrant. The court concluded that because the officers had received basically the same incriminating information from two apparently independent sources, the officers were entitled to believe the information was reliable. Based on this "corroboration" of the calls, the efforts taken to verify the facts in the calls, and the lack of any improper act by the magistrate in issuing the warrant, the court concluded that the officers had acted in good faith and could reasonably rely on the validity of the warrant.

**2.** We first applied *Leon* in *State v. Schaffer,* 107 Idaho 812, 693 P.2d 458 (Ct.App.1984), despite some expressed misgivings. Our Supreme Court had not then addressed *Leon.* We nevertheless felt constrained to follow *Leon* because of the well-marked lead of our Supreme Court in repeatedly construing Article 1, § 17 of the Idaho Constitution consistently with the nearly identical Fourth Amendment of the United States Constitution. Recently that pattern ended. In *State v. Thompson,* 114 Idaho 746, 760 P.2d 1162 (1988), the Supreme Court invoked the Idaho Constitution to provide greater protection from warrantless uses of pen registers than is provided under the Fourth Amendment. *Thompson* did not implicate *Leon* in any way, however, and the *Leon* question is yet to be addressed by our Supreme Court. Accordingly, we continue to follow *Leon.*

Our review of the district court's application of *Leon* presents a question of law under which we exercise free review. In *Leon*, the United States Supreme Court held a search pursuant to a warrant later determined to have been issued without probable cause may still be upheld under a "good faith" exception to the exclusionary rule. Evidence obtained in the search is admissible under this exception if it can be said that the officers acted "in objectively reasonable reliance" on the sufficiency of the warrant and on the magistrate's probable cause determination.

*Leon* recognizes that suppression of the evidence remains an appropriate remedy under circumstances where the officer did not have reasonable grounds for belief in the warrant's validity. These circumstances exist where:

■ the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard of the truth[;]
■ the issuing magistrate wholly abandoned his judicial role in [such a manner or under] such circumstances [that] no reasonably well-trained officer should rely on the warrant[;] ... [3] [the warrant is] based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable[;]" ... [or] [4] a warrant [is] so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume [the warrant] to be valid. [Citations omitted.]

*United States v. Leon*, 468 U.S. at 923, 104 S.Ct. at 3420–3421. *See also State v. Rice*, 109 Idaho 985, 712 P.2d 686 (Ct.App.1985); *State v. Schaffer*, 107 Idaho 812, 693 P.2d 458 (Ct.App.1984).

■ Prestwich asserts that the officers' reliance was not reasonable because the magistrate abandoned his neutral and detached judicial role and merely ratified the unsupported conclusions of the investigating officers when he authorized the warrant. The magistrate compromised his role, Prestwich argues, by failing to observe the minimum applicable standards for issuance of the warrant. Prestwich supports this view by noting that the warrant lacks probable cause and that it authorizes nighttime execution without reciting a substantial supporting rationale.

This argument by Prestwich is misplaced. While in *Prestwich I* it was determined that the warrant was invalid due to a lack of probable cause, this does not demonstrate that the role of the magistrate was compromised. In *Leon*, the Supreme Court described this category as one where the magistrate, instead of acting in a neutral and detached manner, serves merely as a rubber stamp for the officers and their request for a search warrant. *United States v. Leon*, 468 U.S. at 914, 104 S.Ct. at 3416 (citing *Lo–Ji Sales, Inc. v. New York*, 442 U.S. 319, 99 S.Ct. 2319, 60 L.Ed.2d 920 (1979)).

This did not occur at the hearing for Prestwich's search warrant. The record here establishes that the magistrate was presented with the testimony of an investigating officer and an affidavit which detailed the evidence gathered. The magistrate did not merely ratify unsupported conclusions of the officer. The allegations of the officer were challenged by pertinent questions from the magistrate. These inquiries sought to elicit the female informant's basis of knowledge for identifying the marijuana, the time of the officers' surveillance of the residence, and the rationale for the officers' request for daytime or nighttime service of the warrant. The magistrate weighed the evidence presented, the inferences available from it, and concluded that there was probable cause to issue the warrant. While we later held that the magistrate erred in this determination, nothing in the record suggests any abrogation of his proper role in the proceeding. The hearing was not an exercise of rubber stamping the officer's request for a warrant.

We interpret Prestwich's contentions as more accurately an application of the third *Leon* category—where the supporting evidence was "so lacking in indicia of probable

cause as to render belief in its existence by the officers unreasonable." In effect, Prestwich questions whether the information presented to the magistrate was sufficient to enable the officers to reasonably believe that a proper finding of probable cause could be made. As we stated in *State v. Schaffer, supra,* the application of this *Leon* category presents a difficult question, where a reviewing court has already determined that no substantial basis to find probable cause for the warrant existed under a "totality of circumstances." *State v. Schaffer,* 107 Idaho at 822, 693 P.2d at 468. If under such a broad test the evidence could not establish probable cause, can an objectively reasonable, well-trained officer believe that sufficient indicia of probable cause existed to support the warrant? In *Schaffer,* we acknowledged that only in a narrow band of cases would the evidence allow such a determination.

█ Our determination in *Prestwich I* that the warrant was not supported by a "totality of circumstances" with probable cause is different from this question of whether the affidavit was so lacking in indicia of probable cause that the officers could not reasonably rely upon it. We are focused here on whether the officers should have known the search was illegal despite the magistrate's authorization, not upon what this or some other magistrate might have done when presented with this evidence.

We conclude that an officer here reasonably could believe that the information provided was sufficient for a proper finding of probable cause. This evidence is not "so lacking" in indicia of probable cause as to render belief in its existence unreasonble. Here, two separate, apparently independent sources contacted different law enforcement offices and reported the same basic incriminating information about Prestwich. We think it was not unreasonable that a well-trained police officer might believe this "sum" of information would be judicially recognized as being more reliable than either of its "parts." The district court—and perhaps the magistrate—held the view that inter-corroboration was pro-

vided by the two informants. We are not aware of any Idaho case discussing this proposition. It may be that courts will rarely find instances where one unidentified informant can be said to corroborate another unidentified informant. *But see United States v. Dauphinee,* 538 F.2d 1 (1st Cir.1976). The fact remains that no "bright line" rule existed here to render Officer Birch's belief unreasonable. Nor was Birch dissuaded from seeking a search warrant when he sought and received the assistance of the prosecuting attorney.

The observations made by Birch and the other officers not only confirmed the non-incriminating information provided by the informants, those observations also were entirely consistent with the incriminatory information. Birch's training and experience had taught him that a marijuana growing operation will often be concealed in a closed structure using a ventilating fan for humidity control and lights to induce optimum growing conditions. The evidence was not so slight or insufficient as to deny an officer the belief that probable cause existed under a "totality of circumstances." The officers had acted to confirm the details presented; and from the information available, they had verified what they could of the informants' tips. It was not unreasonable for the officers to believe that from these facts the magistrate could infer that marijuana was probably being cultivated in the shed attached to Prestwich's residence.

The exclusionary rule carries as one of its goals the deterrence of unlawful police conduct. The *Leon* decision elevated this goal to primary importance, stating that "the exclusionary rule is designed to deter police misconduct...." *United States v. Leon,* 468 U.S. at 916, 104 S.Ct. at 3417. Upon this rationale the *Leon* court held that the purpose of the exclusionary rule would not be served by finding an officer's reliance unreasonable solely due to a judicial disagreement on the sufficiency of the evidence to determine the existence of probable cause. To prohibit the officer's reliance under these circumstances would carry a result contrary to that intended in *Leon.* "Penalizing the officer for the mag-

istrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* at 921, 104 S.Ct. at 3419.

We conclude that the officer's reliance on the warrant was reasonable, and under *Leon,* the evidence should not be suppressed. The decision of the district court in upholding the validity of the search warrant is affirmed.

WALTERS, C.J., and BURNETT, J., concur.