783 P.2d 298

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Keith PRESTWICH,
Defendant–Appellant.**

No. 18045.

Supreme Court of Idaho.

Nov. 14, 1989.

Denman & Reeves, Idaho Falls, for defendant-appellant. Reginald Reeves, argued.

Jim Jones, Atty. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., argued, for plaintiff-respondent.

JOHNSON, Justice.

This is a marijuana growing case that has been the subject of two prior opinions of the Court of Appeals. In *Prestwich I* (*State v. Prestwich*, 110 Idaho 966, 719 P.2d 1226 (Ct.App.1986)) the Court of Appeals held that the search warrant pursuant to which approximately 400 marijuana plants were seized from Keith Prestwich's home was issued without probable cause. However, the Court of Appeals remanded the case to the trial court for an evidentiary hearing to decide on the objective reasonableness of the reliance of the police

officers on the warrant according to the good faith standards established in *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

On remand the trial court ruled that the marijuana plants should not be suppressed because the police officers who seized them reasonably relied on the validity of the warrant. In *Prestwich II (State v. Prestwich,* 115 Idaho 317, 766 P.2d 787 (Ct.App. 1988)) the Court of Appeals affirmed the decision of the trial court. We granted review of the decision of the Court of Appeals.

We have reviewed and considered the briefs, the record, the transcript, the exhibits and the two opinions of the Court of Appeals. We have also listened to and considered the oral arguments of the parties that were presented to us. Based on this review and consideration we concur with the decision of the Court of Appeals in *Prestwich II,* so far as it goes. We supplement the opinion of the Court of Appeals with our analysis of one aspect of *Leon* that was not considered by the Court of Appeals.

Preliminarily, we note that Prestwich has not questioned the applicability of *Leon* under the unreasonable search and seizure provision of our constitution (article 1, § 17). We also note that our Court of Appeals has previously held that *Leon* is applicable under article 1, § 17. *State v. Rice,* 109 Idaho 985, 712 P.2d 686 (Ct.App. 1985) *rev. denied* (1986). Although in *Prestwich II* the Court of Appeals indicated that this Court has not yet addressed the applicability of *Leon* under our state constitution (109 Idaho at 989 n. 2, 712 P.2d at 690 n. 2), by the denial of review in *Rice,* this Court implicitly approved the applicability of *Leon* under article 1, § 17. *Hays v. State,* 115 Idaho 315, 316, 766 P.2d 785, 786 (1988).

We also point out that on this appeal the question of probable cause for issuing the search warrant was not before the Court of Appeals and is not before us. *Prestwich I* held that there was no probable cause to issue the warrant. That is the law of this case, and it need not be revisited here.

Following the remand ordered by the Court of Appeals in *Prestwich I,* the trial court held an evidentiary hearing and concluded that the officers who seized the marijuana plants could have reasonably relied on the validity of the warrant. The trial court also concluded that none of the four exceptions to this good faith rule of *Leon* existed in this case. In its opinion in *Prestwich II* the Court of Appeals addressed only two of these four exceptions, the one relating to the magistrate's abandoning a neutral and detached judicial role (the neutral and detached judicial role exception) and the one relating to the supporting evidence being " 'so lacking in indicia of probable cause as to render belief in its existence by the officers unreasonable.' " (the so lacking probable cause exception). 115 Idaho at 320–21, 766 P.2d at 790–91. We accept the analysis of the Court of Appeals as to the standard of review to be applied and as to the two exceptions addressed in *Prestwich II.* We write here only to address the other exceptions to the *Leon* rule that were considered by the trial court but were not addressed by the Court of Appeals.

## I.

### ARE THE OTHER EXCEPTIONS TO THE *LEON* RULE PROPERLY BEFORE THE COURT IN THIS APPEAL?

On this review of the decision of the Court of Appeals Prestwich has raised for the first time the exception to the *Leon* good faith rule relating to the magistrate's having been misled by information that the officer who applied for the warrant knew was false, or would have known was false, except for the officer's reckless disregard of the truth (the false information exception).

We first note that Prestwich did not assert the false information exception in the statement of issues in his brief in *Prestwich II* or in his argument before the Court of Appeals. In his brief he listed the same issues that he had listed in his brief in *Prestwich I, i.e.,* (1) whether the magistrate's authorization of a nighttime search

was an abuse of discretion, and (2) whether the evidence presented by the officer supported a finding of probable cause for the issuance of a search warrant. However, in his points and authorities and in the body of the brief in *Prestwich II* he cited *Leon* and invoked the neutral and detached judicial role exception. The Court of Appeals interpreted Prestwich's contentions as more accurately an application of the so lacking probable cause exception. 115 Idaho at 320–21, 766 P.2d at 790–91.

We are presented first with the question of whether the false information exception is properly an issue in this appeal. The State has asserted that since this exception was not listed in the issues on appeal in Prestwich's initial brief in this appeal and since the Court of Appeals did not address this exception, it would be improper for us to do so on review. While we would have preferred that Prestwich had specifically addressed the false information exception in the statement of issues that were presented to the Court of Appeals, we conclude that the issue is properly before us, and we will address it.

I.A.R. 35 contains the following provisions:

(a) Appellant's Brief. The brief of the appellant shall contain the following divisions under appropriate headings:

. . . .

(4) Issues Presented on Appeal. A list of the issues presented on appeal, expressed in the terms and circumstances of the case but without unnecessary detail. The statement of the issues should be short and concise, and should not be repetitious. The issues shall fairly state the issues presented for review. The statement of issues presented will be deemed to include every subsidiary issue fairly comprised therein.

. . . .

(b) Respondent's Brief. The brief of the respondent shall contain the following divisions under appropriate headings:

. . . .

(4) Additional Issues Presented on Appeal. In the event the respondent contends that the issues presented on appeal listed in appellant's brief are insufficient, incomplete, or raise additional issues for review, the respondent may list additional issues presented on appeal in the same form as prescribed in Rule 35(a)(4) above.

This Court and the Court of Appeals have held that the failure of the appellant to include an issue in the statement of issues required by I.A.R. 35(a)(4) will eliminate the consideration of that issue in the appeal. *Jensen v. Doherty*, 101 Idaho 910, 911, 623 P.2d 1287, 1288 (1981); *Drake v. Craven*, 105 Idaho 734, 736, 672 P.2d 1064, 1066 (Ct.App.1983) *rev. denied* (1984). However, this Court has indicated that this rule might be relaxed where the issue was addressed by authorities cited or arguments contained in the briefs. *Bolen v. Baker*, 69 Idaho 93, 99, 203 P.2d 376, 379 (1949); *State v. Dennard*, 102 Idaho 824, 825 n. 2, 642 P.2d 61, 62 n. 2 (1982); *State v. Hoisington*, 104 Idaho 153, 159, 657 P.2d 17, 23 (1983).

Here, the whole purpose of the remand to the trial court by the Court of Appeals in *Prestwich I* was the consideration of the *Leon* good faith rule. On remand the trial court considered all four exceptions to the *Leon* rule. In responding to Prestwich's brief in *Prestwich II*, the State rephrased the issue on appeal, as follows: "On remand did the district court correctly apply the *Leon* good faith exception to the exclusionary rule in reaffirming its prior denial of Prestwich's motion to suppress evidence?" These circumstances placed the *Leon* rule and all its exceptions at issue in this appeal. Nevertheless, we understand how the Court of Appeals was misled by Prestwich's presentation of the issues and therefore did not address the false information exception.

We also note that the fourth exception to the *Leon* rule was addressed by the trial court in its decision on remand, but has not been raised even before this Court on review of the decision of the Court of Appeals. This exception relates to the warrant being so facially deficient in failing to particularize the place to be searched or the things to be seized that the officer could not reasonably presume the warrant to be

valid. We conclude that there is no basis for considering this exception here, since the warrant accurately described the place to be searched and the things to be seized.

## II.

### DOES THE FALSE INFORMATION EXCEPTION APPLY TO THE CIRCUMSTANCES OF THIS CASE?

■ Prestwich asserts that he made a threshold showing that the information from the anonymous informants was false and that the police knew, or should have known, of its falsity. He argues that a simple, sincere observation of Prestwich's premises would have disclosed that the information provided by the anonymous callers could not have been true.

The false information exception finds its origin in *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). *See State v. Schaffer*, 107 Idaho 812, 819, 693 P.2d 458, 465 (Ct.App.1984). *Franks* has been applied by this Court in a case in which probable cause for the issuance of a search warrant was at issue. *State v. Lindner*, 100 Idaho 37, 592 P.2d 852 (1979). There, it was admitted that the information was false. The only issue was whether the officer knowingly and intentionally or recklessly included the information in the affidavit used to obtain the warrant. 100 Idaho at 41, 592 P.2d at 856. This Court held that there was not sufficient evidence to prove that the officer's mistake in including the information in the affidavit was intentional or with reckless disregard for the truth of the information. Here, questions have been raised as to both the falsity of the information and as to the officer's reckless disregard for the truth of the information.

*Franks* established the standard for determining whether a threshold showing of falsity has been made:

There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained.

438 U.S. at 171, 98 S.Ct. at 2684.

Here, there are no allegations of deliberate falsehood. The essence of Prestwich's position is that the officer recklessly disregarded the lack of truth of information given by the second anonymous informant concerning: (1) the informant's wandering onto the premises in search for her lost dog, (2) the window through which the informant said she made observations, and (3) the identification of marijuana plants.

Prestwich contends that it was inherently improbable that the informant could have wandered onto the premises looking for her lost dog, because of the presence of fierce dogs on the premises. Evidence was offered on remand that these dogs would have prevented access to the property and would have devoured the lost dog. However, the officer denied any knowledge of these fierce dogs and testified that the dogs were not present when the warrant was executed. The evidence here does not establish that it would have been impossible for the informant and her dog to have wandered onto the property or that the officer was reckless in accepting the truth of the informant's statement that they did so.

Prestwich contends that it would not have been possible for the informant to have seen marijuana plants through the window because at the time of the search there was a covering over the window that obscured the inside of the shed where the plants were growing. However, no evidence was offered that this was the condition of the window when the informant made her observations. The State offered evidence that if the covering had not been over the window, an observer could have seen the marijuana plants through the window. We conclude that there was no proof as to the falsity of the information given by the informant or as to the recklessness of the officer in accepting it.

Prestwich also contends that there was an inadequate showing that the informant could have identified the plants as being marijuana plants. However, the informant stated that she had taken a class in which she had learned how to identify marijuana plants. No proof was offered that this was false or that the officer was reckless in accepting it.

In sum, we conclude that Prestwich did not make a threshold showing under the false information exception.

### III.

### CONCLUSION.

Based on the opinion of the Court of Appeals and our supplement to that opinion, we affirm the decision of the trial court refusing to suppress the 400 marijuana plants.

BAKES, C.J., and BOYLE and McDEVITT, JJ., concur.

BAKES, Chief Justice, concurring specially:

I concur in the Court's opinion that the good faith rule of *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), is the rule in Idaho and write only to indicate that in my view we need to reconsider this Court's decision in *Hays v. State,* 115 Idaho 315, 766 P.2d 785 (1988), relating to the precedential effect of this Court's denial of review of a decision of the Court of Appeals.

BISTLINE, Justice, concurring specially in the major portion of the Court's opinion.

*State v. Lindsey,* 115 Idaho 184, 765 P.2d 695 (1988) was a fourth amendment case decided by the Court of Appeals on December 7, 1988. This Court denied the defendant's petition requesting that we grant review by an order entered March 13, 1989. 115 Idaho 795, 770 P.2d 804. I felt compelled to question that denial because of a discrepancy between the Court of Appeals' reasons for finding credibility in the public informant and the *trial court's factual finding.* 115 Idaho at 795–796, 770 P.2d

804. More importantly, my concern was that this Court eschewed the opportunity to address head-on an important question left untouched by the Court of Appeals in its opinion, although directly involved in the trial court's decision:

> In addition to the naked factual problems, this case presents an important question of law unaddressed by the Court of Appeals. As noted, the trial court ruled that under the *Leon* exception to the exclusionary rule, the illegally seized evidence would not be suppressed. First, this Court has not adopted—nor rejected—the *Leon* 'good faith' exception to the exclusionary rule. *State v. Johnson,* 110 Idaho 516, 716 P.2d 1288 (1986).

> Second, the trial court's application of *Leon,* even assuming the doctrine might be applicable in this jurisdiction, is flawed. The trial judge did not find good faith; he found only a lack of bad faith. [Footnote omitted.] I submit that the two are not synonymous. Between the quantum of proof required to establish good faith on the one hand, and a lack of bad faith on the other, is an often nebulous, but all important, shade of gray.

> Thus, not only do the factual inconsistencies between the findings of the trial judge and Court of Appeals opinions cause one to pause, but the teaching of *Leon* requires this Court's attention. As noted above, the good faith rule of *Leon* states that the exclusionary rule *will be* applied 'where the warrant clearly lacks a probable cause basis.'

*Lindsey,* 115 Idaho at 796, 770 P.2d 804.

*State v. Johnson,* cited in the first paragraph of the foregoing quote, was one of the earlier Idaho cases acknowledging the *Leon* opinion of the United States Supreme Court, doing so initially in 110 Idaho 516, 525, 716 P.2d 1288, 1297 (1986), footnote 10, in connection with an exhaustive discussion of the exclusionary rule under both federal and state of Idaho law:

> [I]n *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 3419–20, 82 L.Ed.2d 677 (1984), the Court held that the exclusionary rule should not be applied so as to bar the use of evidence in the prosecu-

tion's case in chief obtained by an officer acting in reasonable reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid.

*Johnson,* 110 Idaho at 525, 716 P.2d at 1297. The opinion thereafter dealt at some length with applying *Leon* to the evidentiary facts of *Johnson,* and finally concluded that *Leon* was indeed inapplicable, and that *Segura*[1] was applicable instead:

> *Leon* and *Segura* have generated much debate. [Footnote omitted.] We need not enter that debate and decide whether *Leon's* 'good faith' exception should be adopted as part of Idaho constitutional law, because we find it to be inapplicable to the facts of this case.

*Johnson,* 110 Idaho at 528–529, 716 P.2d at 1300–1301.

Even before our opinion in *Johnson,* the Court of Appeals had paused to examine *Leon* with considerable thoroughness in the\ very same year that the High Court announced its "good faith" exception to the exclusionary rule. *State v. Schaffer,* 107 Idaho 812, 693 P.2d 458 (1984). In concluding the discussion in *Schaffer,* Judge Burnett in his usual scholarly style first explained what *Leon* was all about, and why it would be applied in deciding the fourth amendment issue in *Schaffer.* 107 Idaho 812, 820, 693 P.2d 458, 466 (1984). He also philosophized as to the future should Idaho's counterpart to the fourth amendment be modified to include the *Leon* innovation:

> In *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), the Supreme Court adopted a limited good faith exception. The Court held that when a search warrant has been obtained and executed by the police in good faith, the fourth amendment exclusionary rule may not be invoked to suppress evidence merely because the warrant is later found defective for lack of probable cause. The underlying premise of *Leon* is that the exclusionary rule exists solely to deter the police from wrongful conduct, and no such purpose can be served if the police have acted in good faith.

The Supreme Court also has taken the position in *Leon* that the exclusionary rule is not a constitutional adjunct of the fourth amendment but is merely a judicial prophylaxis to be employed according to the Court's perception of the social costs and benefits ascribed to it.

. . . .

> Of course, the Idaho Supreme Court has not yet subscribed to *Leon,* as it has to [*Illinois v.*] *Gates* [462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)] and *Franks.* Our Supreme Court may do well to defer this choice for a reasonable time, until the federal experience under *Leon* can be evaluated. [Footnote omitted.] However, the instant case cannot await this determination. We must decide the case now, and we deem ourselves constrained to do so in compliance with our Supreme Court's declaration that the search-and-seizure provision of the Idaho Constitution is to be construed consistently with the fourth amendment. *Leon* represents the latest construction of the fourth amendment. Accordingly, we will consider the implications of *Leon* for this case, but we intimate no view that *Leon* ultimately should be adopted in Idaho.

. . . .

> When such a profound difference in the result turns upon such a subtle variation in the analysis, *we have cause for concern that the fourth amendment is becoming enmeshed in a network of fine distinctions. We are also reminded how delicately the police power of the state is balanced against the right of all people to be secure in their homes. As probable cause is relegated to a lesser place in the fourth amendment, the impact of magistrate decisions upon this critical balance will grow. That, in the final analysis, is the lesson of* Leon.

*Schaffer,* 107 Idaho at 820–822, 693 P.2d at 466–468 (emphasis added).

Today this Court embarks on the "experiment" which Judge Burnett mentioned the United States Supreme Court had initiated

---

1. *Segura v. United States,* 468 U.S. 796, 104 S.Ct. 3386, 3391, 82 L.Ed.2d 599 (1984).

in its *Leon* opinion. We get there by two routes. One route is finding merit in the *ratio decedendi* by which the higher court arrived at its destination, notwithstanding the contrary and better-reasoned views of Justices Brennan and Stevens.

The other, far less acceptable route, is that taken by Justice Johnson. He asserts that we arrived at our *Leon* destination in December of 1988 in *Hays v. State*, 115 Idaho 315, 316, 766 P.2d 785, 786, wherein *this Court's only activity was to deny a petition for review*. In *Hays* Justice Johnson asserted that, "[b]ecause we denied review in *Brooks* [*Brooks v. State*, 108 Idaho 855, 702 P.2d 893 (Ct.App.1985)], that case became controlling precedent in this state with regard to any new principles of law announced there." 115 Idaho at 316, 766 P.2d at 786. By denying review in *Brooks*, however, this Court said nothing whatsoever about the merits of the Court of Appeals decision in *Brooks*. A vote was taken on the petition for review, and there were not the three votes necessary to grant review. Again, nothing whatever was written. When the vote is to grant, nothing is written, and the votes are simply recorded and an order issues. Occasionally when one member of the Court believes that review should not have been denied, a short opinion will allow the petitioner the small gratification which comes with knowing that one or two members of the Court took the time to painstakingly read what was painstakingly written. Other than that, an opinion dissenting from the denial serves no purpose. So far as I know, although it might change a vote, I do not recollect that this has happened. Therefore, denial of review by this Court should carry no more weight than a denial of certiorari by the United States Supreme Court—such a denial "means only that, for one reason or another which is seldom disclosed, and not infrequently for conflicting reasons which may have nothing to do with any view of the merits taken by a majority of the Court, there were not four [three] members of the Court who thought the case should be heard." *Daniels v. Allen*,

344 U.S. 443, 492, 73 S.Ct. 437, 439, 97 L.Ed. 469 (1953).

Also of concern here is that the Court of Appeals is greatly fettered by this new Johnson Rule of *stare decisis*. That court may now be precluded from having a change of mind over the years on a point of law which it has been the first Idaho appellate court to announce, simply because this Court did not grant a petition for review of the Court of Appeals' decision.

To support his assertion in *Hays* Justice Johnson cited as authority only *"[s]ee Nash v. Overholser*, 114 Idaho 461, 757 P.2d 1180 (1988)," specifically the special concurring opinion of Justice Johnson, which was joined by Huntley, J., and Bistline, J. *Hays*, 115 Idaho at 316, 766 P.2d at 786. That special concurring opinion was written for the purpose of advancing another theory for affirming the holding in *Nash*.[2] The majority opinion was based on application of *res judicata*. Justice Johnson wrote to affirm on the basis of principles of claim preclusion. In that specially concurring opinion, 114 Idaho at 464, 757.P.2d at 1180, Justice Johnson did not deal solely with the Court of Appeals' *Aldape v. Akins* opinion, 105 Idaho 254, 668 P.2d 130 (1983). Instead he inserted two extraneous sentences which he did not even purport to substantiate with any authority whatever, primarily because there was no authority. He wrote: *"In my opinion* the result of the failure of this Court to grant a petition for review is that the decision of the Court of Appeals becomes the law of this state with regard to any new principles of law announced in the decision ... The decision of the Court of Appeals in *Aldape* has, since the denial of review by this Court, constituted the law of this state on the subject of *res judicata*." 114 Idaho at 463–64, 757 P.2d at 1182–83 (emphasis added). Although as the voting took place, I at one point concurred in Justice Johnson's opinion because it adopted the well written opinion of the Court of Appeals, ultimately I wrote my own opinion in which I concurred "only in this Court's judgment affirming the trial court's judgment." Every

2. This was much the same as I did this year in

*Hall v. Hall*, 116 Idaho 483, 777 P.2d 255 (1989).

member of this Court was aware of my reasons, which were fairly and accurately stated. Unfortunately, West Publishing Co., although it did observe that I had written separately to concur only in the affirming of the district court judgment, failed to recognize that such was inconsistent with my own special concurrence. This failure was not a fault attributable to West Publishing, but to clerical error in not making certain that my name had been removed from the two opinions authored by Justices Huntley and Johnson.

With the published opinions erroneously showing the line-up of the membership, in *Hays* Justice Johnson was facially able to point to his opinion in *Nash* as a three-member opinion which it appeared to be. But it was not a holding. It was, and remains, a gratuity. There was already in place an affirming majority for the Huntley opinion. Moreover, neither party to the appeal had requested any ruling that denial of a petition for review was tantamount to making a particular case the precedential law for the state of Idaho. In reviewing the briefs it is readily established that neither party in *Hays* in their Statement of Issues or Points and Authorities made any suggestion that *Nash v. Overholser* or any of its opinions, or extraneous statements therein contained, and specifically the purported rule of law which is being discussed, should have any application. Apparently there are contrary views among us as to whether precedential case law was made, as Justice Johnson asserts to be so, by reason of *Nash* and *Hays*. Some members of the Court may be joining the theory of his sequel opinion issued this day regarding *Leon*. As may be so with other members of the Court, I concur in the result, but do so only on the basis of temporarily engaging in "the federal experiment" as Judge Burnett so regarded *Leon*. Other than for Justice Johnson's insistence that case law precedent was made by reason of wholly gratuitous remarks in *Nash* and in *Hays*, *with which I strongly disagree*, I find the Court's opinion in *Prestwich* well written and accordingly concur therein albeit perhaps only temporarily where the federal experiment of *Leon* is concerned.

BOYLE, Justice, concurring specially.

I concur that the good faith exception established by the United States Supreme Court in *United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984), is the law in this state, however, for reasons different than those cited. The *Leon* good faith exception should be applicable and expressly adopted under the Idaho Constitution on its own merit, rather than upon this Court's failure to grant review in *State v. Rice*, 109 Idaho 985, 712 P.2d 686 (Ct.App.1985), *rev. denied* (1986).

BISTLINE, J., concurs.